Gaylon CLARK, et al., Plaintiffs,

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT, et al., Defendants.**

No. CA-3-85-1203-T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 15, 1987.

Wm. Charles Bundren, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., J. Shelby Sharpe, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., Roderic Steakley, Shank, Irwin & Conant, William Charles Bundren, Jackson Walker Winstead Cantwell & Miller, Dallas, Tex., for plaintiffs.

Allen Butler, Kelly J. Gaffney, Richard K. Willard, Washington, D.C., Marvin Collins, Mary Ann Moore, Dallas, Tex., Brook Hedge, Washington, D.C., for defendants.

Theodore Hirt, Dept. of Justice, Civil Div., Washington, D.C., for U.S.

## ORDER GRANTING SUMMARY JUDGMENT

MALONEY, District Judge.

On July 15, 1986 Plaintiffs filed their Motion for Partial Summary Judgment.

On July 15, 1986 Defendants filed their Motion for Summary Judgment.

The Court, having considered the Motions and supporting argument, is of the opinion that summary judgment should be granted in favor of Defendants.

## Factual Background

Plaintiffs first met for informal prayer sessions on school property during the 1982-83 school year. The unscheduled sessions were held several times a week, and six or seven students generally attended. No school administrator questioned these meetings.[1]

During the 1983-84 school year, the students continued to meet; however, the format of the meetings changed. Up to twenty-five students attended these meetings, and the meetings were held at a scheduled time and place.[2] Plaintiff Steve May led these meetings, at which the students would join hands, pray, sing hymns, and read and interpret scripture.[3] During this school year, no administrator prevented the group from meeting.

During the 1984-85 school year, Clark assumed leadership of the group, which increased in size and scope. It grew to about sixty students, and on two occasions, the meeting drew 150 students. At another meeting, 100 students formed a circle to pray together. The meetings were no longer impromptu; they were scheduled on a regular basis, and were held next to the cafeteria.[4]

Under Clark's leadership, the group's objectives changed. It was no longer an outlet for the collective prayer of its members; its new goal was to save the souls of the students who had not yet come over to the group.[5] Other students were invited to join, and many did. To bring in new members, Plaintiff Clark preached loudly to attract the attention of other students. The group distributed religious pamphlets at school, urging students to dedicate their lives to Jesus. The more zealous methods and increased numbers attracted the attention of the school administration.[6]

At the group's fourth session during the 1984-85 school year, two assistant principals interrupted a prayer meeting at which 35-40 students were present. Plaintiff Mitchell had read scripture to the students for 10-12 minutes when the assistant principals told Plaintiff Clark that it was against school regulations for the group to meet on school property. Clark asked if he could issue a final invitation, and the assistant principals allowed him to do so; they then escorted him to the principal's office.[7]

The principal, Frank Guzick, told Clark he must cease preaching on campus because of the school district policy. Guzick also told Clark he could preach at the vacant lot across from the school, but Clark replied that he would not do so, that he had a higher calling than school board policy and that he was going to preach when God called him to preach. Guzick advised Clark that he would be provided with a room and a sponsor if school district policy changed. After Clark's meeting with Guzick, the organized meetings ceased. Plaintiffs continued to discuss their religion with others and pray discreetly; the administration did not attempt to limit such expression and prayer.[8]

The record reflects that after Clark was warned not to conduct religious meetings on school property, Plaintiffs used bullhorns four times to broadcast religious messages to students. On one occasion, a minister from a church in Rockwall, Texas assisted.[9]

The record further reflects that Plaintiffs have stressed that alternative, non-campus locations are inadequate, even though non-campus meetings provide the

1. Mitchell Deposition, 12-18.

2. Mercado Deposition, 11-3; Bentley Deposition, 12; Edwards Deposition, 11-12.

3. Bentley Deposition, 18-19; Riggs Deposition, 26-27; Clark Deposition, 15.

4. Mitchell Deposition, 43-46; Clark Deposition, 32; Riggs Deposition, 40; Edwards Deposition, 42-43.

5. Clark Deposition, 28-30; Mitchell Deposition, 41, 64-65; Bentley Deposition, 101.

6. Bentley Deposition, 22, 77-78; Mercado Deposition, 28; Clark Deposition, 28-29, 92.

7. Jones Affidavit; Clark Deposition, 38-39; Bentley Deposition, 57-59.

8. Guzick Affidavit; Jones Affidavit.

9. Clark Deposition, 59-62.

same feeling of fellowship and strength. Plaintiffs contend that the group's primary apostolic purpose of obtaining conversions is thwarted by the district's policy.[10]

### Free Exercise

■ Students do not shed their first amendment rights when they enter school property. *Tinker v. Des Moines Independent School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Students do not shed their right to free exercise of religion in the same circumstances. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *West Virginia Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). The first amendment rights of high school students, however, are not coextensive with the rights of adults in other settings. Although "diverse political and religious views" must be tolerated, the students' right of expression must be balanced against the school's countervailing interest in protecting the privacy of unwilling student listeners and avoiding disruption in school activities. *Bethel School District v. Fraser,* 474 U.S. 814, 106 S.Ct. 56, 88 L.Ed.2d 45 (1986).

Public high school facilities are not, by tradition, a forum for public expression. *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Public forum status is inappropriate for environments in which the full exercise of first amendment rights would be inconsistent with the "special interests of a government overseeing use of the property." *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 540, 100 S.Ct. 2326, 2334, 65 L.Ed.2d 319 (1980). The school's policy does not restrict expression if the regulation is reasonable, and is not an effort to suppress expression "merely because public officials oppose the speaker's view." *Perry,* at 46, 103 S.Ct. at 955.

■ Plaintiffs have valid free exercise claims as to some of their actions. Many other actions, however, involve no valid constitutional components. The actions that can be most easily prohibited by the school district involve the use of bullhorns at any time on school property. *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). Suppression of this manner of expression is reasonable considering the use to which the property is dedicated, and the views expressed are irrelevant to the school's concern for maintaining orderly conduct among students who wish to listen to the messages and the privacy interest of those students who would rather not. Student proselytizing, intended to draw the attention of all in the immediate area, is inconsistent with the use for which school property is reserved, and may be prohibited by the district without infringing on the Plaintiffs' free exercise rights. The school may permissibly prevent organized religious meetings without violating Plaintiffs' free exercise rights. The growth of the meetings, sometimes up to 100 students or more, is inconsistent with the intended use of school property. *Brandon v. Board of Education,* 635 F.2d 971 (2d Cir.1980), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); *Lubbock Civil Liberties Union v. Lubbock Independent School District,* 669 F.2d 1038 (5th Cir.1982).

Other activities of Plaintiffs do imply rights under the free exercise clause. Plaintiffs may discuss religion and pray discreetly with others; the school does not attempt to limit them in such activities. The nature of meetings during the 1982–83 and 1983–84 school years permissibly comported with the nature of the school forum. Small, informal meetings, centered on communication between the group members and not disrupting the comings and goings of other students by proselytizing, is consonant with the use for which the state holds its property. These activities are the only ones to which Plaintiffs may make free exercise claims. All other activities are inappropriate to the nature of the forum, and may be prohibited by the school without offending the first amendment.

---

**10.** Clark Deposition, 98–99; Mercado Deposition, 61–62.

## Establishment Clause

█ The relevant portion of the district's policy regarding religious expression on school property provides that "student groups shall not be permitted to meet on campus immediately before or after school for religious purposes." The district relied upon *Lubbock Civil Liberties Union v. Lubbock Independent School District*, 669 F.2d 1038 (5th Cir.1982), and *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), in writing its policy. The policy's preamble states that "the district is committed to the constitutional principle of the separation of church and state. The district will neither advance nor inhibit religion." Plaintiffs claim that the total prohibition of religious meetings does inhibit religion to an impermissible extent.

This Court is directed by the holding in *Lemon* to determine whether this policy is permissible. *Lemon* sets forth three tests: (1) whether the challenged policy has a clearly secular purpose; (2) whether the challenged policy has as a principal effect neither the advancement nor inhibition of religion; and (3) whether the challenged policy avoids an excessive entanglement with religion. *Lemon*, at 612–13, 91 S.Ct. at 2111.

The Court concludes that as to the first of the *Lemon* tests, the district's policy withstands scrutiny because it has a secular purpose: advancing the constitutional demand of separation of church and state. The contrary result sought by Plaintiffs, to allow religious meetings on campus, would evince an intent to endorse religion. *Lubbock*, at 1044.

The Court further concludes that as to the second of the tests, the district's policy withstands scrutiny because the policy does not inhibit religious beliefs or customs; it recognizes that such beliefs and customs may be exercised on an individual basis without penalty. The policy only limits group expression of such beliefs. This limitation is necessary to avoid advancing religion. Plaintiffs, in seeking a contrary result, would have the school district adopt a policy that would carry a message of religious endorsement. "Allowing religious meetings at a time closely associated with the beginning or end of the school day implies recognition of religious activities and meetings as an integral part of the district's extracurricular program, and carries with it an implicit approval by school officials of these programs." *Lubbock*, at 1045.

The Court further concludes that as to the third *Lemon* test, the district's policy withstands scrutiny because the policy avoids an excessive entanglement with religion. *Roemer v. Board of Public Works*, 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976). If the state must engage in continuing administrative supervision of nonsecular activity, the church and state are excessively intertwined. *Lubbock*, at 1047. The present policy presents no entanglement, as no meetings are permitted and no supervision is required. The policy sought by Plaintiffs would be impermissible, because it would require the entanglement disapproved in *Lubbock*.

*Lemon* directs this Court to conclude that when all three tests are met, then the challenged policy is constitutional. The Court finds that the policy in question here is constitutional under the *Lemon* guidelines.

## Free Exercise versus Establishment Clause

█ Plaintiffs have presented a limited free exercise right to engage in certain activity. Defendants have successfully demonstrated that allowing that activity would violate the establishment clause. The Court is faced with "a constitutional conflict of the highest order." *Bender v. Williamsport Area School District*, 741 F.2d 538 (3rd Cir.1984), at 557.[11] This

---

**11.** The Supreme Court in *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) was faced with a challenge to a university policy regarding the use of campus facilities by registered student groups. The questions before the Court were whether (1) the university violated the free exercise rights of a registered student group desiring to use campus facilities for religious discussion and worship; and (2) the university's policy withstood scrutiny under

Court concludes that the questions raised in this case regarding the free exercise clause and the establishment clause must, in the context presented here, be resolved in favor of the establishment clause.

The establishment clause does not exist in a position of perpetual supremacy over the free exercise clause. *Bender*, at 558. The "circumstances of a particular relationship" determine which clause should prevail in a given environment. *Lynch v. Donnelly*, 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984). The environment at issue here is that of the public secondary school, with its unique concern for non-sectarian neutrality. In weighing the appropriate interests at issue in this environment, that is, the district's interest in meeting its constitutional obligation of neutrality and the students' interest in the free exercise of their religious expression, the scales are tipped in favor of the district. The district presents a compelling state interest in observing its constitutional obligation of neutrality. *Widmar*, at 271, 102 S.Ct. at 275. The forum at issue, a high school, is not one that is traditionally dedicated to unrestrained religious expression. *Perry*, at 49, 103 S.Ct. at 957; *Scarsdale v. McCreary*, 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985), *affirming per curiam; McCreary v. Stone*, 739 F.2d 716 (2d Cir.1984). A reconciliation in favor of the establishment clause does little violence to the interests asserted by Plaintiffs in support of the limited activities to which they have a legitimate free exercise right, as they can meet on nearby private property.[12] A reconciliation in favor of the free exercise clause, in contrast, would operate against the district's constitutional obligations. The constitutional interests present in this circumstance require that the establishment clause interests of the district take precedence over the free exercise interests of Plaintiffs.

## Equal Access Act

■ Analysis of the Equal Access Act, 20 U.S.C. §§ 4071–73, is absent from the foregoing resolution of the issues because application of this statute would demand a contrary conclusion, one in favor of Plaintiffs' free exercise rights. The Act would define the school here as a "limited open forum," 20 U.S.C. § 4071(b), and would explicitly allow religious meetings at the school, 20 U.S.C. § 4071(a). Such a conclusion is contrary to the application of caselaw pertinent to the facts of this case.

The Act would require an unconstitutional result. This Court has arrived at its conclusion analyzing the facts of this case in light of the proper constitutional framework. An application of the Act would yield a contrary result, and would offend the Constitution. The Act was passed, in part, to overrule the first amendment interpretations of *Lubbock* and *Brandon*. 130 Cong.Rec. 8334–8336 (daily ed. June 27, 1984). A constitutional interpretation can be overruled only by constitutional amendment, and not by act of Congress. *Kawakita v. United States*, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952). Because it is constitutionally impossible for the Equal Access Act to overrule the constitutional interpretation made by the Fifth Circuit in *Lubbock*, that case remains the law of this Circuit. *Lubbock* and the other constitutional interpretations relied upon here, demand that establishment clause interests of the district prevail over the free exercise interest of Plaintiffs. Because the application of the Equal Access Act would command an unconstitutional result under the facts of this case, it cannot override the

---

establishment clause principles. The Court decided the case on free speech and free association grounds, and stated:

> Accordingly, we need not inquire into the extent, if any, to which free exercise interests are infringed by the challenged University regulation. Neither do we reach the questions that would arise if state accommodation of free exercise and free speech rights should,

in a particular case, conflict with the prohibitions of the Establishment Clause.

*Widmar*, at 273, n. 13, 102 S.Ct. at 276 n. 13. The Court held that "the interest of the University in complying with its constitutional obligations may be characterized as compelling." At 271, 102 S.Ct. at 275.

**12.** Guzick Affidavit; Mercado Deposition, 61–62.

establishment clause interests of the district.

This Court therefore concludes that the district's policy withstands the constitutional challenges raised by Plaintiffs, and the district may permissibly restrict the exercise of Plaintiffs' free exercise rights.

It is therefore ORDERED that:

1.  Plaintiffs' Motion for Partial Summary Judgment is denied; and,

2.  Defendants' Motion for Summary Judgment is granted.

It is so ORDERED.